```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
AARON RUDDY,                              :
                                          :
                     Plaintiff,           :
          -v-                             :         25cv2304 (DLC)
                                          :
DANIEL F. MARTUSCELLO III, et al.,        :         OPINION AND
                                          :            ORDER
                     Defendants.          :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff Aaron Ruddy:

Charen Kim
Charen Kim Law Firm
160 Broadway, 4th Floor
New York, NY 10038

For defendants Daniel F. Martuscello III, et al.:

Gee Won Cha
New York State Office of The Attorney General
28 Liberty Street, 18th Floor
New York, NY 10005

DENISE COTE, District Judge:

Aaron Ruddy sued the New York State Department of
Corrections and Community Supervision ("DOCCS"), DOCCS's current
and former Commissioners, the New York State Board of Parole
("BOP"), BOP's current and former Chairmen, and two employees
(collectively, the "Defendants"), for failing to credit his
state sentence for time he spent in federal custody and, as a
result, incarcerating him beyond his lawful sentence.
Defendants move to dismiss the claims for lack of personal

jurisdiction and failure to state a claim.  For the following reasons, the motion is granted.

## Background

The following facts are alleged in the first amended complaint ("FAC") or, where noted, are taken from documents on which the plaintiff relies.[1]  This Opinion summarizes only the facts necessary to decide this motion.

In brief, Ruddy is a Florida resident who has multiple convictions and parole violations.  His conviction in 2011 in New York state court is at the heart of this action.  Ruddy served only part of the sentence imposed on that conviction before absconding.  He was later convicted on federal charges and served time in federal custody.  As a state court judge ruled in 2023, the time Ruddy spent in federal custody should have been credited against his 2011 state sentence and Ruddy was entitled to be released from the state facility in which he was held.  This action focuses on events in 2023, when defendant Mckenzie Trubridge, Ruddy's parole officer, corresponded with Ruddy's mother about whether the state had given him appropriate

---

[1] In reviewing a motion to dismiss for failure to state a claim, the court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice."  United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020) (citation omitted).

credit for the time he had spent in federal custody.  To place that correspondence and the issues it raised in context, a description of Ruddy's relevant criminal history follows.

On May 19, 2011, Ruddy was sentenced in New York state court to two consecutive, indeterminate sentences of three to six years (six to twelve years total) for his conviction on two counts of criminal possession of a forged instrument. Indeterminate sentences like Ruddy's generally run continuously for every day an individual spends in prison or under parole supervision but can be interrupted by two events: escape from prison or delinquency from parole supervision.  See N.Y. Penal Law § 70.40(3)(a).  Ruddy began serving his sentence the next day, on May 20, and was released on parole early on September 7 after completing a drug treatment program.  Then, five months later, on February 25, 2012, Ruddy absconded.

On May 10, 2012, Ruddy was arrested in Mexico and deported to the United States.  He pled guilty to federal bank robbery charges in the Southern District of Florida and was sentenced to 63 months of imprisonment, followed by 36 months of supervised release.  Ruddy was sent to a federal prison in New York to serve his federal sentence.

On June 11, 2012, New York's DOCCS lodged a parole violation warrant against Ruddy based on his abscondment and the

Florida bank robbery.  The warrant recorded his delinquency date as February 21, 2012.  A final parole revocation hearing was held three years later on September 3, 2015 before Administrative Law Judge Edward Mevec in the federal prison where Ruddy was serving his federal sentence.  Ruddy pled guilty to three violations of parole for his actions in 2012 and was ordered to serve a delinquent "time assessment" of 54 months, running from June 11, 2012 (the date the warrant was lodged) to December 11, 2016.

On September 28 and November 16, 2015, Ruddy sent letters to Deborah Jarvis, a DOCCS inmate records coordinator, to ask whether he was entitled to receive credit toward his 54-month time assessment.  On October 2, 2015, Ruddy also sent a letter to his parole officer, Mckenzie Trubridge, regarding the time assessment.  On December 11, 2016, Ruddy was released from federal prison.  It is undisputed that his time assessment had been fully served at that time.

On July 2, 2020, Ruddy was arrested again in Florida and, as the FAC explains, was "in and out" of jail.  On January 27, 2023, DOCCS lodged a second parole violation warrant against Ruddy and returned him to state custody.  On September 10, 2023, Ruddy filed a writ of habeas corpus in New York state court to

challenge his continued incarceration based on the May 19, 2011 state sentence of six to twelve years.

On September 20, 2023, Ruddy's mother emailed Trubridge (almost eight years after Ruddy's initial letter to her), asking her to look at Ruddy's letter, in which he had "laid out his times and parole dates" and said he "is over his time to be incarcerated."  Trubridge responded on September 22 and again on September 25, attached the meeting minutes from the September 3, 2015 final parole hearing, and explained that Ruddy was not given credit by DOCCS (a New York state agency) for his time served in federal custody because the sentencing courts did not both specify that his terms should run concurrently at the time of sentencing.  Trubridge suggested contacting the DOCCS Office of Sentencing and Review "[f]or further direction."[2]

On December 5, 2023, Acting Justice Michael Mohun of the Wyoming County Supreme Court granted Ruddy's habeas petition and ordered his release from custody to the extent that he continued to be held pursuant to the May 19, 2011 state sentence.[3]  Justice Mohun noted that the parties agreed that Ruddy had fully served

---

[2] The correspondence between Trubridge and Ruddy's mother was attached as an exhibit to Ruddy's opposition brief.  Because Ruddy relied on it in resisting this motion, it is quoted here.

[3] The December 5, 2023 Opinion granting Ruddy's habeas petition was attached as an exhibit to Ruddy's opposition brief.

his time assessment.  He then rejected the state's argument that Ruddy's 2011 state sentence should not be credited for the time Ruddy spent in federal custody while on parole.  The judge explained that Ruddy was sufficiently under DOCCS's "convenience and practical control" while he was in federal prison such that the 54 months that constituted his time assessment should count towards his 2011 state sentence as well.  Ruddy was released from custody one week later, on December 12, 2023.

On March 20, 2025, Ruddy filed this action against DOCCS, BOP, and many of their current and former employees, seeking damages for the error Justice Mohun identified.  The individual defendants from DOCCS in the initial complaint included Daniel Martuscello, III, the Acting Commissioner of DOCCS; and Anthony Annucci, the former Commissioner of DOCCS from 2013 to 2023. The individual defendants from BOP included Darryl Towns, the Acting Chairman of BOP; Carlton Mitchell, the former Chairman of BOP; and Mckenzie Trubridge, Ruddy's parole officer.  Ruddy also sued ten unknown "John Doe" employees of DOCCS and BOP. Defendants filed a motion to dismiss on July 29, at which point Ruddy was given the opportunity to amend his complaint and was warned that it was unlikely he would have a further opportunity to amend.

On August 14, Ruddy filed the FAC, again seeking damages from the defendants.  The FAC includes claims against all the defendants named in the initial complaint and one additional individual: Deborah Jarvis, the inmate records coordinator who corresponded with Ruddy.  Ruddy contends that he was wrongfully incarcerated beyond his state sentence after defendants failed to give him credit for time he served in federal custody.  Ruddy brings federal constitutional claims under § 1983 and the Fourteenth Amendment against each individual defendant in their official and individual capacities for violating his liberty interests, as well as claims against DOCCS and BOP for a failure to train and supervise their employees.  Lastly, he raises state law claims for negligence against DOCCS and BOP, and for aiding and abetting the deprivation of his rights against the individual BOP defendants.

All of the defendants except for Jarvis (who, at the time, had not yet been served) renewed their motion to dismiss on September 12.  Jarvis filed a separate motion to dismiss on October 10.  Both motions became fully submitted on October 24.

## Discussion

The defendants' motions to dismiss argue that Ruddy's claims are jurisdictionally barred by the doctrine of sovereign immunity, or that he fails to plead a defendant's personal

involvement in the alleged violations of federal law.  They are correct.

Because "state sovereign immunity is a jurisdictional limitation on the power of federal courts," a motion to dismiss on the ground that defendants are immune from suit under the Eleventh Amendment is brought under Rule 12(b)(1).  Baroni v. Port Auth. of N.Y. & N.J., 161 F.4th 48, 54 (2d Cir. 2025) (citation omitted).  To defeat a motion to dismiss brought under Rule 12(b)(1), a plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Id.

Defendants' remaining arguments for failure to state a claim are brought under Rule 12(b)(6).  To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  Doe, 100 F.4th at 94 (citation omitted).

I.   State Agencies

Ruddy's federal and state law claims against the state agencies, DOCCS and BOP, are barred by the Eleventh Amendment. "The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it."  Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 193 (2d Cir. 2015).  This rule also applies to "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989).  It is undisputed that DOCCS and BOP are "arms of the state."  Ruddy also does not contend that New York waived its sovereign immunity in this case.  Nor does (or could) he claim that Congress abrogated state sovereign immunity when the Supreme Court has held that § 1983 does not abrogate sovereign immunity.

See id. at 71.  Thus, the claims against DOCCS and BOP are dismissed.

II.  State Officials in their Official Capacity

"A Section 1983 claim for damages against a state official can only be asserted against that official in his or her individual capacity."  Mallet v. N.Y. State Dep't of Corrs. & Cmty. Supervision, 126 F.4th 125, 138 (2d Cir. 2025) (citation omitted); see also Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is . . . no different from a suit against the State itself.").  Thus, the federal and state law claims brought against the individual defendants in their official capacities are barred by the Eleventh Amendment and dismissed as well.

Ruddy contends that his claims against the state officials in their official capacities survive the Eleventh Amendment bar because they fall under the Ex parte Young exception.  As Ruddy acknowledges, however, the Ex parte Young exception only applies when plaintiffs seek prospective relief to halt ongoing violations of law -- after all, the purpose of the exception is to allow courts to enjoin state officials from continuing their current violations of federal law.  See Green v. Mansour, 474 U.S. 64, 68 (1985); see also Ex parte Young, 209 U.S. 123, 155-56 (1908).  The FAC does not allege any ongoing violation of

law.  Any error made in failing to credit Ruddy's state sentence for the time he served in federal prison was made in the past, and any detention past the expiration of his sentence ended upon his release from state custody on December 12, 2023.  As a result, the Ex parte Young exception does not apply.

III. State Officials in their Individual Capacity

   A.    Current and Former Agency Leaders in their Individual Capacity

The claims brought against the current and former leaders of DOCCS and BOP -- defendants Daniel Martuscello, III, Anthony Annucci, Darryl Towns, and Carlton Mitchell -- in their individual capacities are dismissed because the FAC fails to allege their personal involvement in a constitutional violation. It is well-established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Iqbal, 556 U.S. at 676.  As a result, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id.

Ruddy alleges that his constitutional rights were violated when his 2011 sentence was not credited with the 54-month time assessment he served in federal prison and, as a result, he was incarcerated beyond the expiration of his 2011 state sentence.

Although Ruddy does not dispute that he must plead the agency leaders' personal involvement in this constitutional violation to plausibly state a § 1983 claim, the FAC does not allege that any of them actually participated in the calculation of his state sentence or were otherwise informed of a potential error in crediting him for time he served under federal custody.[4] Instead, Ruddy contends that the officials' maintenance of "policies and customs that contributed to the violation, including systemic failures in reviewing or correcting parole time assessments" constituted their personal involvement.  He relies on a standard for supervisory liability from Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), in which

> The personal involvement of a supervisory defendant may be shown by evidence that . . . the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom . . . .

Id. at 873.

---

[4] Ruddy does claim in his opposition brief that the agency leaders were "repeatedly notified . . . via letters and grievances about his unlawful incarceration due to miscalculated time credits" and failed to take "steps to investigate or remedy the prolonged detention."  The FAC does not allege, however, that any of the four agency leaders were notified of the alleged issue.  The FAC only alleges that Ruddy informed Trubridge, his parole officer, of a potential error regarding a failure to credit his state sentence for the time he served in federal custody.

But the Second Circuit has since rejected the Colon "policy or custom" standard to show a supervisor's personal involvement in a constitutional violation rooted in a subordinate's conduct. In Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), the Second Circuit held that Iqbal, which the Supreme Court decided in 2005, "cast doubt on the continued viability of the special standards for supervisory liability set forth in Colon," id. at 617, and that "[w]e join [other] circuits in holding that after Iqbal, there is no special rule for supervisory liability." Id. at 618. Instead, the Circuit clarified, a plaintiff must plead and prove that each defendant, "through [their] own individual actions," violated the Constitution. Id. (quoting Iqbal, 556 U.S. at 676). Thus, "[t]he factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." Id. (citation omitted).

Here, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (citation omitted). The FAC does not allege any conduct by Martuscello, Annucci, Towns, or Mitchell that "may fairly be said to shock the contemporary

13

conscience." Therefore, the FAC does not plausibly plead that these current and former agency leaders were personally involved in any violation of Ruddy's constitutional rights, and the individual-capacity claims against Martuscello, Annucci, Towns, and Mitchell fail.[5]

B.   Agency Employees Jarvis and Trubridge

Ruddy also brings claims against two state employees, Jarvis and Trubridge, alleging the same substantive due process violation regarding a failure to credit his state sentence for the time he served in federal custody. These individual-capacity claims also fail because the FAC does not plausibly allege Jarvis or Trubridge's personal involvement in any constitutional violation.

As explained above, the Second Circuit has held that "substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse

---

[5] The FAC also includes a state-law cause of action against "the Parole defendants," who the Court understands to consist of Towns, the Acting Chairman of BOP; Mitchell, the former Chairman of BOP; and Trubridge, Ruddy's parole officer, for "aiding and abetting" the DOCCS defendants. The FAC contends that the BOP defendants "aided and abetted the [DOCCS] defendants" in violating his Fourteenth Amendment rights by "implementing, promulgating, and enforcing and/or effectuating a policy, practice or custom pursuant to which plaintiff was subjected to restriction of his liberty." Because the FAC failed to plausibly allege that the DOCCS defendants violated Ruddy's constitutional rights, this claim that the BOP defendants "aided and abetted" the DOCCS defendants in doing so fails as well.

14

of governmental authority." <u>Matzell v. Annucci</u>, 64 F.4th 425,
436 (2d Cir. 2023) (citation omitted).  In particular, a
plaintiff must not only "identify the constitutional right at
stake" but also "demonstrate that the state action was so
egregious, so outrageous, that it may fairly be said to shock
the contemporary conscience."  <u>Id.</u> (citation omitted).

Here, it is true that Ruddy has a "protected liberty
interest in being free from wrongful, prolonged incarceration."
<u>Hurd v. Fredenburgh</u>, 984 F.3d 1075, 1088 (2d Cir. 2021)
(citation omitted).  After all, "[t]he general liberty interest
in freedom from detention is perhaps the most fundamental
interest that the Due Process Clause protects."  <u>Matzell</u>, 64
F.4th at 437 (citation omitted).  To hold a state official like
Jarvis or Trubridge individually liable for a violation of this
liberty interest, however, Ruddy must plead that they, "through
[their] own individual actions," personally violated his rights,
<u>Iqbal</u>, 556 U.S. at 676, by engaging in conduct that "may fairly
be said to shock the contemporary conscience."  <u>Matzell</u>, 64
F.4th at 436 (citation omitted).  The FAC fails to do so.

As an initial matter, the FAC alleges that both Jarvis and
Trubridge were "partially responsible for the calculation of
Plaintiff's sentence" in their capacity as "DOCCS agent[s]."
But such an allegation, standing alone without any details as to

15

either officer's "partial[]" role in the calculation, is conclusory.

Ruddy contends that both Jarvis and Trubridge personally violated his substantive due process rights because they did not "investigate and respond in a meaningful way" or otherwise take steps to "remedy the prolonged detention." But Ruddy's claim against Jarvis, an inmate records coordinator, fails because the FAC does not allege that he ever contacted her about whether the state appropriately credited his 2011 sentence for the time he had spent in federal custody. As recounted in the FAC, Ruddy's correspondence with Jarvis was limited to two emails in 2015, in which he asked whether he would receive credit towards the 2015 delinquent time assessment he received for his parole violations (not his 2011 state sentence).

As for Trubridge, Ruddy's parole officer, the FAC does allege that Ruddy contacted her about the error at the heart of his complaint. The FAC alleges that, in 2023, in response to an email from Ruddy's mother claiming that he should have been released, Trubridge explained that Ruddy was not given credit by DOCCS against his state sentence for the time he served in federal custody because the sentencing courts did not both specify that his terms should run concurrently, and suggested contacting the DOCCS Office of Sentencing and Review "[f]or

further direction."  Ruddy fails to establish that Trubridge's prompt response, which acknowledged Ruddy's inquiry and suggested his mother contact the appropriate office, was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Matzell, 64 F.4th at 436 (citation omitted).  The FAC does not plausibly plead that Trubridge had any role in deciding whether Ruddy's 2011 state sentence would be credited for the time he spent in federal custody.  Moreover, Ruddy cites to no authority or factual allegations establishing that she had an obligation or the authority to personally remedy any potential error in the calculation of his state sentence and any applicable credits. Thus, his individual-capacity claims against both Jarvis and Trubridge are dismissed.[6]

---

[6] Persons who have been incarcerated by the state longer than the law permitted may be able to bring a claim against the state in the New York Court of Claims.  See N.Y. Corr. Law § 24(2) ("Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state."); see also Hurd, 984 F.3d at 1083 (noting that plaintiff bringing § 1983 claims against DOCCS employee in federal court had "also filed a state law false imprisonment claim in New York's Court of Claims").

17

## Conclusion

The defendants' September 12, 2025 and October 10, 2025 motions to dismiss are granted.  The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:     New York, New York
           February 5, 2026

                                   _____
                                          DENISE COTE
                               United States District Judge